UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEBBIE W.,[1]

                                                Plaintiff,                    Case # 23-CV-743-FPG

v.                                                                                  DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                                Defendant.
_____

## INTRODUCTION

Plaintiff Debbie W. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g). Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 6, 9. For the reasons that follow, Plaintiff's motion is GRANTED, and the Commissioner's motion is DENIED.

## BACKGROUND

In February 2019, Plaintiff applied for DIB with the Social Security Administration ("the SSA"). Tr.[2] 110. She alleged disability since September 2018. *Id.* In March 2022, Administrative Law Judge Paul Georger ("the ALJ") issued a decision finding that Plaintiff is not disabled. Tr. 15-25. In June 2023, the Appeals Council denied Plaintiff's request for review. Tr. 1-4. This action seeks review of the Commissioner's final decision. ECF No. 1.

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 5.

1

**LEGAL STANDARD**

I.  **District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted).

II.  **Disability Determination**

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 18. At step two, the ALJ found that Plaintiff has several severe impairments. *Id.* At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal any Listings impairment. Tr. 19.

Next, the ALJ determined that Plaintiff retained the RFC to perform a reduced range of light work. *Id.* At step four, the ALJ found that Plaintiff could not perform any past relevant work. Tr. 24. At step five, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. Tr. 24-25. Accordingly, the ALJ concluded that Plaintiff is not disabled. Tr. 25.

## II. Analysis

Plaintiff argues that remand is warranted because the ALJ failed to properly consider Plaintiff's October 2021 lumbar MRI. *See* ECF No. 6 at 13. The Court agrees.

Plaintiff has long complained of lower back pain. *See, e.g.*, Tr. 762, 781, 828. Plaintiff's October 2018 imaging showed chronic compression at L1 and mild spondylosis in the thoracic spine. Tr. 628-29. At that time, Plaintiff complained of "mild" daily back pain. Tr. 790. In January 2019, Plaintiff visited the Chautauqua Center for assistance with her back pain. Tr. 781. She described her symptoms as "mild and worsening." *Id.* A physical examination showed no pain, normal strength, and normal sensation in the lumbosacral spine. Tr. 782. The provider referred Plaintiff to physical therapy and recommended an MRI of the lumbar spine. Tr. 784. In February 2019, Plaintiff was enrolled in physical therapy for her back. Tr. 563. Plaintiff complained that she could only stand for 15 minutes and walk for 20 minutes. Tr. 564. She attended the initial session but did not return thereafter. Tr. 563.

In May 2019, Plaintiff attended a consultative examination with Russell Lee, M.D. Tr. 828. Dr. Lee observed that Plaintiff could walk with a normal gait and on heels and toes without difficulty. Tr. 830. Plaintiff used no assistive devices and could rise from the exam table without help. *Id.* Dr. Lee reviewed Plaintiff's recent x-ray of the lumbar spine, Tr. 831, 833, and concluded that she had a moderate limitation in activities involving prolonged standing,

4

prolonged sitting, bending, lifting, walking great distances, and climbing stairs.  Tr. 832.  The x-ray showed a partial compressive deformity in L1, and mild levoscoliosis with mild multilevel degenerative changes at T12-S1.  Tr. 833.

In June 2019, state agency consultant D. Brauer, M.D., opined that Plaintiff could perform a reduced range of medium work.  Tr. 114-16.  In August 2019, state agency consultant D. Miller, D.O., likewise concluded that Plaintiff could perform a reduced range of medium work.  Tr. 125-28.

In January 2020, Plaintiff reported no musculoskeletal issues during an appointment, Tr. 875, and a physical examination of her back revealed no issues.  Tr. 876.  In December 2020, Plaintiff underwent further imaging.  Tr. 986.  It showed chronic L1 compression deformity and mild thoracic degenerative changes.  Tr. 1008.  In January 2021, Plaintiff received a prescription for gabapentin for her sciatica and was referred to pain management.  Tr. 994.

In April 2021, Plaintiff received imaging on her lumbar spine, which showed chronic compression deformity of L1 with "approximately 20% loss of height."  Tr. 997.  There were mild multilevel spondylotic changes.  *Id.*  In May 2021, Plaintiff had an appointment during which she complained of sciatica and lumbar pain.  Tr. 987.  Plaintiff showed tenderness in her paralumbar spine on palpation, no midline lumbar tenderness, and ambulation without difficulty.  Tr. 1029.  Plaintiff's medications were increased.  Tr. 987.  In October 2021, Plaintiff received additional MRI imaging.  Tr. 1006.  It showed chronic mild compression deformity of L1, and multilevel changes in the lower lumbar spine.  Tr. 1007.  The x-ray showed moderate to severe canal stenosis in L4-L5 that could "impress upon traversing nerve roots."  Tr 1006-07.

In February 2022, Plaintiff testified at a hearing before the ALJ.  Tr. 32.  She stated that she could stand for up to fifteen minutes at a time and walk a "couple blocks" without pain.  Tr.

5

43. Plaintiff testified that she had switched from gabapentin to cyclobenzaprine because the former upset her stomach. Tr. 46. Plaintiff reported that her doctor intended to determine whether surgery was necessary in the beginning of the summer. Tr. 45.

The ALJ concluded that Plaintiff could perform a reduced range of light work. Tr. 19. In doing so, he largely rejected the medical opinions in the record. He found the opinions of the state agency consultants unpersuasive because they were inconsistent with "the longitudinal record." Tr. 22. In particular, he found their opinion regarding medium work inconsistent with Plaintiff's back pain and reports that "activities can worsen her pain." *Id.* By contrast, the ALJ found Dr. Lee's consultative opinion "partially persuasive," insofar as it could be read to conclude that Plaintiff could "perform a range of light exertional work." *Id.* The ALJ found Plaintiff's complaints inconsistent with the evidence, including the normal clinical findings, her daily activities, and the sporadic treatment she received. Tr. 21, 23. He also inferred from the fact that Plaintiff had reduced her medication regimen to ibuprofen and a muscle relaxer that "other modalities" were not "necessary." Tr. 21. With respect to the October 2021 MRI, the ALJ summarized it as follows: "An MRI of [Plaintiff's] lumbar spine revealed multilevel changes and indicated that her compression deformity was stable." Tr. 21.

The Court agrees that the ALJ erred in his consideration of the October 2021 MRI. For much of the relevant period, the ALJ's conclusion that Plaintiff's back pain is not disabling finds strong support in the record. *See* Tr. 21, 23. But the MRI revealed a new condition in Plaintiff's L4-L5 spinal region: moderate to severe canal stenosis secondary to diffuse disc bulge, central disc protrusion, and ligamentum flavum hypertrophy, which could "impress upon traversing nerve roots." Tr. 1007. While the Court—like the ALJ—does not have the medical expertise to fully interpret those findings, what is evident even to a layperson is that these findings are novel.

Plaintiff's previous imaging does not identify any such L4-L5 issue or, indeed, any spinal issue more than "mild."  *See* Tr. 628 (October 2018 x-ray); Tr. 833 (May 2019 x-ray); Tr. 1008 (December 2020 x-ray); Tr. 997 (April 2021 x-ray).

As a result, this new imaging may be relevant to Plaintiff's application—at least to her more recent claims that she suffered from significant, debilitating back pain.  Tr. 43-45.  Indeed, there is some evidence to suggest that Plaintiff's condition was worsening at or around the time of the October 2021 MRI.  Just a few months before, Plaintiff's medications were increased and surgery was suggested as a possible course of treatment should pain management be unsuccessful.  *See* Tr. 987.  And just a few months later, at the February 2022 hearing, Plaintiff complained of significant, debilitating back pain and reported using a back brace and taking ibuprofen and a muscle relaxer.  Tr. 43-45.

Unfortunately, because no medical source reviewed or offered an opinion on the October 2021 MRI, its relevance could not be fully understood.  This left a gap in the record that rendered the ALJ's decision erroneous.  Either the ALJ attempted to evaluate the relevance of the MRI without the benefit of a medical source's insight, in which case he erred, *see Kelly W. v. Comm'r of Soc. Sec.*, No. 20-CV-581, 2022 WL 600838, at *4 (W.D.N.Y. Mar. 1, 2022) (stating that an ALJ may not "interpret raw medical data that would require the expertise of a physician or other trained medical source"), or he ignored the MRI, in which case he erred.  *Bushey v. Comm'r of Soc. Sec.*, No. 17-CV-450, 2019 WL 1424547, at *5 (W.D.N.Y. Mar. 29, 2019) (noting that an ALJ may not "ignore or mischaracterize evidence of a person's alleged disability").  In short, the ALJ erred when he "failed to submit th[e] MRI to medical scrutiny, as [he] should have done since it was new and potentially decisive medical evidence." *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014).

This is not to say that new imaging invariably requires an updated medical opinion. The determination will always be fact-sensitive. *See Smith v. Comm'r of Soc. Sec.*, 528 F. Supp. 3d 66, 69 (E.D.N.Y. 2021) ("Broad statements of disability law, particularly from district courts, are of little use when removed from their fact-specific context."). For example, if the new imaging is consistent with earlier imaging that was scrutinized by a medical source, an updated opinion may be unnecessary. *See, e.g.*, *Steininger v. Colvin*, No. 12-CV-1968, 2013 WL 2417977, at *3 (C.D. Cal. May 30, 2013). Or if, despite recent imaging suggesting a claimant's impairment had become more severe, there is record evidence proving the absence of any corresponding functional decline, the ALJ may "make common sense inferences" from such record evidence to conclude that the new imaging does not warrant a more restrictive RFC. *Nancy B. v. Comm'r of Soc. Sec.*, No. 19-CV-6574, 2021 WL 716705, at *3 (W.D.N.Y. Feb. 24, 2021); *cf. Anthony F. v. Comm'r of Soc. Sec.*, No. 23-CV-33, 2023 WL 7294874, at *4 (W.D.N.Y. Nov. 6, 2023) (noting that "subsequent surgeries and new diagnos[es] do not, alone, render opinions stale" and that a claimant must also "show that his physical condition deteriorated after the medical opinions were provided"). Such grounds are not present here, however.

Accordingly, because the ALJ erred in his consideration of the October 2021 MRI, remand for further proceedings is warranted.

## CONCLUSION

For all of the reasons stated, Plaintiff's Motion for Judgment on the Pleadings (ECF No. 6) is GRANTED, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 9) is DENIED. This matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: June 10, 2024
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York